UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YURY SHUBIN,

                                        Plaintiff,

                    -v-

SLATE DIGITAL, INC., MICHAEL HORTON,
WILLIAM L. BROOK, *and* ERIC STARK,

                                        Defendants.

21 Civ. 9464 (PAE)

<u>OPINION & ORDER</u>

PAUL A. ENGELMAYER, District Judge:

Plaintiff Yury Shubin ("Shubin") brought claims against Slate Digital, Inc. ("Slate"),

Michael Horton ("Horton"), William L. Brooke ("Brooke"), and Eric Stark ("Stark") (together,

"defendants") in the New York State Supreme Court in Manhattan, claiming that defendants had

acted unlawfully in stripping him of his vested shares after he was terminated from Slate. His

suit charged, *inter alia*, fraudulent inducement, breach of fiduciary duty, conversion, and a

violation of the New York Labor Law § 193. Shubin then moved for injunctive relief. While

that motion was pending, defendants timely removed the case to federal court on the basis of

diversity jurisdiction.

Defendants now move to compel arbitration of Shubin's claims. They also seek fees and

costs associated with moving to compel and opposing injunctive relief. For the following

reasons, the Court grants the motion to compel arbitration, denies Shubin injunctive relief, denies

the request to award fees and costs, and stays the case pending the completion of arbitration.

## I.      Background[1]

### A.      The Parties

Shubin is a co-founder and shareholder of Slate.  He resides in Sofia, Bulgaria.  Compl. ¶ 2.

Slate, a social media content creation platform, is a Delaware company, with its principal place of business in New York.  *Id.* ¶¶ 1, 7.  Horton is a co-founder and chief executive officer of Slate.  *Id.* ¶ 3.  Brooke is a co-founder and shareholder.  *Id.* ¶ 4.  Stark is a co-founder and chief operating officer.  *Id.* ¶ 5.  Horton and Brooke are New York residents; Stark is an Oregon resident.  *Id.* ¶¶ 3–5.

### B.      Factual Background

On August 10, 2017, Shubin, Horton, and Brooke formed a partnership and co-founded a startup named Fontmoji, a Delaware company, as a social media content creation platform.  *Id.* ¶ 7.  At the time, Shubin was the only software engineer; he was responsible for the "technical ideas."  *Id.* ¶ 8.  Over the next two years, Shubin built a set of iOS applications, back-end systems, and administration panel(s) without a salary.  *Id.* ¶¶ 9–10.  At some point, Shubin became the company's chief technology officer.  *Id.* ¶ 12.  In or around late 2019, the startup was renamed Slate.  *Id.* ¶ 11.  In or around late October 2019, Stark joined the company as the fourth co-founder.  *Id.* ¶ 14.

---

[1] The Court draws these facts from the Complaint, Dkt. 1-3 ("Compl."); the declarations of Eric D. Stark, Dkt. 9 ("Stark Decl."), and Frederick L. Whitmer, Dkt. 10 ("Whitmer Decl."), and the exhibits attached thereto.  "In the context of motions to compel arbitration brought under the Federal Arbitration Act ('FAA') . . . the court applies a standard similar to that applicable for a motion for summary judgment," *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003), and may consider materials outside the Complaint, *see, e.g.*, *HBC Solutions, Inc. v. Harris Corp.*, No. 13 Civ. 6327 (JMF), 2014 WL 6982921, at *1 (S.D.N.Y. Dec. 10, 2014).

On October 15, 2019, Shubin entered into a Restricted Stock Purchase Agreement ("RSPA") with the company, under which Shubin bought restricted shares of the company. *Id.* ¶ 17; *see* Whitmer Decl., Ex. A ("RSPA"). Pursuant to Article 3(A) of the RSPA, when Shubin ceased to be affiliated with the company, all of his restricted common shares would be subject to the company's repurchase option at Shubin's initial purchase price, unless the shares had vested. Compl. ¶ 21. Shubin alleges that his restricted common shares had fully vested by August 10, 2021, and therefore fell outside the company's right to repurchase. *Id.* ¶ 23. Before Shubin's shares fully vested, the value of the company had grown substantially, after investments by Seed 1 and Seed 2 Investors in June 2020 and June 2021, respectively. ¶¶*Id.* ¶ 25–32.

In September 2021, Shubin was terminated and removed from Slate's board. *Id.* ¶¶ 33–34. Defendants presented Shubin with a separation agreement, which denied that all of Shubin's shares had vested. They claimed that only some lesser amount had fully vested.[2] *Id.* ¶ 35.

Slate's counsel then sent Shubin a document entitled "Amendment to the RSPA" (the "Amendment"), which was dated June 29, 2021, and which was allegedly executed between Shubin and Slate. *Id.* ¶ 37. The Amendment postponed the start of the vesting period from August 10, 2017, the date provided for in the initial RSPA, to March 1, 2020. *Id.* ¶ 38.

Shubin alleges that his signature affixed to the Amendment was fraudulently induced and improperly affixed. Specifically, he alleges that, on June 29, 2021, Horton demanded that he sign a signature page, which Horton represented would be affixed to a "side letter from an investor." *Id.* ¶¶ 41–42. Instead, Shubin alleges, defendants appended Shubin's signature page to the Amendment, without Shubin having reviewed the Amendment. *Id.* ¶ 45. Shubin alleges

---

[2] The portion of the Complaint quantifying the amount of shares that defendants claim had not fully vested is redacted.

there are other documents to which the same signature page has been affixed without his consent. *Id.* ¶ 46.

Defendants dispute Shubin's allegations of fraudulent inducement. They assert that the co-founders agreed to modify the vesting schedule for their shares as a condition of a new investment in June 2021. Stark Decl. ¶ 6. They assert that Shubin, as a board member and company officer, was fully aware of this and concurred in these decisions, made during the second seed round in June 2021. *Id.* They allege that he, like the company's directors and including the individual defendants, agreed to modify their vesting schedules of common stock such that their shares would fully vest at a later date than earlier agreed upon under the RSPA. *Id.*

## C.  Agreement to Arbitrate and Limits on Seeking Injunctions

Article 11(L) of the RSPA contains a broad arbitration provision, mandating arbitration of all claims arising out of relating to, or resulting from the RSPA, inclusive of any state or federal statutory claims:

> (1) Arbitration.  IN CONSIDERATION OF THE PROMISES IN THIS AGREEMENT, THE PURCHASER AGREES THAT ANY AND ALL CONTROVERSIES, CLAIMS, OR DISPUTES WITH ANYONE (INCLUDING THE COMPANY AND ANY EMPLOYEE, OFFICER, DIRECTOR, SHAREHOLDER OR BENEFIT PLAN OF THE COMPANY IN THEIR CAPACITY AS SUCH OR OTHERWISE) ARISING OUT OF, RELATING TO, OR RESULTING FROM THIS AGREEMENT, SHALL BE SUBJECT TO BINDING ARBITRATION UNDER THE ARBITRATION RULES SET FORTH IN NEW YORK CIVIL PRACTICE LAW AND RULES, ARTICLE 75, SECTION 7501 THROUGH 7514 (THE "RULES") AND PURSUANT TO NEW YORK LAW.  DISPUTES WHICH THE PURCHASER AGREES TO ARBITRATE, AND THEREBY AGREES TO WAIVE ANY RIGHT TO A TRIAL BY JURY, INCLUDE ANY STATUTORY CLAIMS UNDER STATE OR FEDERAL LAW, INCLUDING, BUT NOT LIMITED TO, CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, THE AMERICANS WITH DISABILITIES ACT OF 1990, THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967, THE OLDER WORKERS BENEFIT PROTECTION ACT, THE WORKER ADJUSTMENT AND RETRAINING

NOTIFICATION ACT, THE FAMILY AND MEDICAL LEAVE ACT, CLAIMS OF HARASSMENT, DISCRIMINATION OR WRONGFUL TERMINATION AND ANY STATUTORY CLAIMS.    THE PURCHASER FURTHER UNDERSTANDS THAT THIS AGREEMENT TO ARBITRATE ALSO APPLIES TO ANY DISPUTES THAT THE COMPANY MAY HAVE WITH THE PURCHASER.

(2) Procedure. THE PURCHASER AGREES THAT ANY ARBITRATION WILL BE ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION ("AAA") AND THAT THE NEUTRAL ARBITRATOR WILL BE SELECTED IN A MANNER CONSISTENT WITH ITS NATIONAL RULES FOR THE RESOLUTION OF EMPLOYMENT DISPUTES. . . . THE ARBITRATOR SHALL ADMINISTER AND CONDUCT ANY ARBITRATION IN A MANNER CONSISTENT WITH THE RULES AND THAT TO THE EXTENT THAT THE AAA'S NATIONAL RULES FOR THE RESOLUTION OF EMPLOYMENT DISPUTES CONFLICT WITH THE RULES, THE RULES SHALL TAKE PRECEDENCE.

The RSPA also governs the availability of injunctive relief.  Article 11(L)(4) of the RSPA states:

(4) Availability of Injunctive Relief. BOTH PARTIES AGREE THAT ANY PARTY MAY PETITION A COURT FOR INJUNCTIVE RELIEF *AS PERMITTED BY THE RULES* INCLUDING, BUT NOT LIMITED TO, WHERE EITHER PARTY ALLEGES OR CLAIMS A VIOLATION OF ANY CONFIDENTIAL INFORMATION OR INVENTION ASSIGNMENT AGREEMENT BETWEEN THE PURCHASER AND THE COMPANY OR ANY OTHER AGREEMENT REGARDING TRADE SECRETS, CONFIDENTIAL INFORMATION, NONSOLICITATION OR LABOR CODE § 2870. BOTH PARTIES UNDERSTAND THAT ANY BREACH OR THREATENED BREACH OF SUCH AN AGREEMENT WILL CAUSE IRREPARABLE INJURY AND THAT MONEY DAMAGES WILL NOT PROVIDE AN ADEQUATE REMEDY THEREFOR AND BOTH PARTIES HEREBY CONSENT TO THE ISSUANCE OF AN INJUNCTION.  IN THE EVENT EITHER PARTY SEEKS INJUNCTIVE RELIEF, THE PREVAILING PARTY SHALL BE ENTITLED TO RECOVER REASONABLE COSTS AND ATTORNEYS' FEES.

(emphasis added).  The "Rules" are defined by the RSPA as N.Y. C.P.L.R., Article 75,

Sections 7501 through 7514. *See* RSPA at Article 11(L)(1). N.Y. C.P.L.R. § 7502(c)

provides, in relevant part:

The supreme court in the county in which an arbitration is pending . . . may entertain an application for an order of attachment or for a preliminary injunction in connection with an [arbitrable controversy] . . ., *but only upon the ground that the*

*award to which the applicant may be entitled may be rendered ineffectual without such provisional relief.* The provisions of articles 62 and 63 of this chapter shall apply to the application, including those relating to undertakings and to the time for commencement of an action (arbitration shall be deemed an action for this purpose), except that the sole ground for the granting of the remedy shall be as stated above.

(emphasis added). These provisions of the RSPA were not altered by the Amendment. And Shubin does not dispute that they apply to him. *See* Dkt. 11 ("Def. Memo") at 2; Dkt 1-10.

### D.     Procedural History

On November 1, 2021, Shubin filed his Complaint in New York State Supreme Court. Dkt. 1-3. The same day, Shubin filed an Order to Show Cause, seeking a preliminary injunction preventing defendants from using the Amendment for any purpose and a stay of any transfers of Slate Digital's shares. Dkt. 1-4.

On November 16, 2021, defendants removed the case to federal court. Dkt. 1. On November 19, 2021, defendants filed a motion to compel arbitration, with declarations and a memorandum of law in support. Dkts. 8–10, Def. Memo. On December 14, 2021, Shubin filed an opposition. Dkt. 20 ("Pl. Memo"). On December 21, 2021, defendants filed a reply. Dkt. 22.

## II.    Discussion

### A.     Motion to Compel Arbitration

#### 1.     Legal Standards

The Federal Arbitration Act ("FAA") provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate disputes." *Mitsubishi Motor Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985) (quoting *Moses H.*

*Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983)).  Congress enacted the FAA to reverse "centuries of judicial hostility to arbitration agreements" and "to place arbitration agreements upon the same footing as other contracts." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974) (internal quotation marks and citation omitted).

In resolving a motion to compel arbitration, a court must determine: (1) whether the parties entered into an agreement to arbitrate; (2) if so, the scope of that agreement; (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and (4) if some, but not all, claims are subject to arbitration, whether to stay the balance of the proceedings pending arbitration. *See Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008).

On a motion to compel arbitration under the FAA, "the court applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003).  "[W]here the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, we may rule on the basis of that legal issue and avoid the need for further court proceedings." *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 172 (2d Cir. 2011) (internal quotation marks omitted).

The party moving to compel arbitration "must make a prima facie initial showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement 'in issue.'" *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (summary order).  The moving party need not "show initially that the agreement would be *enforceable*, merely that one existed." *Id.* (emphasis in original).  Thereafter, the party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or

invalid." *Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010) (citing *Green Tree Fin. Corp.–Alabama v. Randolph*, 531 U.S. 79, 91–92 (2000)).

## 2. Application

Defendants argue that, because the RSPA required Shubin to arbitrate his claims, the Court should issue an order compelling arbitration and/or stay the case pending resolution of an arbitration to be commenced. That motion is clearly meritorious. And Shubin does not dispute that, in the RSPA, the parties entered into a binding agreement to arbitrate their disputes.

In deciding whether a dispute is arbitrable, the Court must answer two questions: "(1) whether the parties agreed to arbitrate, and if so, (2) whether the scope of that agreement encompasses the claims at issue." *Holick v. Cellular Sales of New York, LLC*, 802 F.3d 391, 394 (2d Cir. 2015) (internal quotation marks and citation omitted).

The first requirement is clearly met here. Defendants submit sufficient documentary evidence of a valid arbitration agreement between the parties, to wit, the RSPA operative at the time of the alleged fraudulent inducement. *See* Dkt. 1-8. Under Article 11(L)(1), Shubin agreed to resolve "any and all controversies, claims, or disputes," in "binding arbitration." *Id.* at 13.

As to the second requirement, although the broad language of the RSPA's arbitration clause would appear clearly to cover Shubin's claims in the underlying Complaint, that determination is ultimately for the arbitrator to make. As the Supreme Court has explained, "parties can agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (internal quotation marks and citation omitted). And here, the RSPA explicitly provides that "*any and all* controversies, or claims, or disputes . . . arising out of, or relating to, or resulting from this agreement" shall be resolved through

arbitration. RSPA Article 11(L)(1). "When the parties' contract delegates the arbitrability

question to an arbitrator . . . a court possesses no power to decide the arbitrability issue." *Henry*

*Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

Accordingly, the Court grants defendants' motion to compel arbitration, and leaves it for

the arbitrator to determine whether Shubin's claims fall within the broad scope of the claims that

the RSPA commits to arbitration.

### B.    Injunctive Relief

#### 1.    Legal Standards

Shubin's application for injunctive relief is made—as permitted by the RSPA—under

N.Y. C.P.L.R. § 7502, which sets forth the standard for preliminary injunctions sought in aid of

arbitration. In construing this provision, the Second Circuit has held that a petitioner's request

for preliminary injunctive relief will be denied unless (1) the traditional preliminary injunction

standards, set forth in N.Y. C.P.L.R. § 6301, are met; and (2) Section 7502(c)'s "rendered

ineffectual" test is satisfied. *See SG Cowen Secs. Corp. v. Messih*, 224 F.3d 79, 83 (2d Cir.

2000) ("[R]elief can be denied under the traditional [preliminary injunction] standards and

granted *only if* those standards *and* the 'rendered ineffectual' test are met.") (emphasis added);

*see also, e.g., Mishcon de Reya N.Y. LLP v. Grail Semiconductor, Inc.*, No. 11 Civ. 04971 (RJH),

2011 WL 6957595, at *8 n.9 (S.D.N.Y. Dec. 28, 2011) (same).

Courts have found the "rendered ineffectual" test not met where (1) money damages are

available; and (2) plaintiff fails to show that defendants' assets may be dissipated prior to

issuance of an arbitral award. *See Traffix, Inc. v. Talk.com Holding Corp*, No. 00 Civ. 9802

(AKH), 2001 WL 123724, at *1 (S.D.N.Y. Feb. 13, 2001) ("[S]ince there is insufficient evidence

to support Traffix's contention that an arbitral award would be rendered ineffectual due to the

financial insolvency of Talk.com, thus requiring the entry of a preliminary injunction, its motion

seeking such relief is denied."); *Spatz v. Ridge Lea Assocs., LLC*, 765 N.Y.S.2d 84, 86 (2003);

*Founders Ins. Co. v. Everest Nat. Ins. Co.*, N.Y.S.2d 474, 475 (2007); *Winter v. Brown*, 853

N.Y.S.2d 361, 364 (2008). Plaintiff bears the burden of demonstrating that an award would be

"rendered ineffectual." *See Traffix, Inc.*, 2001 WL 123724, at *1.

### 2. Application

Before removal, Shubin filed an Order to Show Cause in state court, seeking to enjoin

defendants from using the Amendment for any purpose and to stay transfers of Slate's shares that

would result in further divestment of Shubin's shares. Dkt. 1-19. When defendants removed the

case, the state supreme court had not yet ruled on Shubin's application. It therefore remains

pending before this Court.

The Court declines to award Shubin the requested relief.[3]  Shubin has not shown that an

arbitral award in his favor would be rendered ineffectual without an injunction. Shubin does not

advance any argument, let alone a compelling one, that a money damages award in his favor

would be unavailable to him or would fail to recompense him.[4]  Shubin's purported injury is that

---

[3] The Court earlier declined to rule on the order to show cause because it had not been filed on the docket of this case. Dkt. 21. With the Court having been furnished with Shubin's order as filed in state court, it appropriately may act on that application. "Removed proceedings arrive in federal court in the procedural posture they had in state court." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 108 (2d Cir. 2006). Thus, when a motion or petition is removed before its return date, it arrives in federal court with its posture "unchanged: a motion with a return date." *Id.*; *see also Wizard v. Clipper Cruise Lines*, No. 06 Civ. 2074 (GEL), 2007 WL 29232, at *2 (S.D.N.Y. Jan. 3, 2007).

[4] For the same reason, Shubin does not satisfy the traditional injunction standard. N.Y. C.P.L.R. § 6301 provides that, "[a] temporary restraining order may be granted pending a hearing for a preliminary injunction where it appears that immediate and irreparable injury, loss or damage will result unless the defendant is restrained before the hearing can be had." Where there is no evidence that money damages will be inadequate to compensate a plaintiff, such injunctive relief will not be granted. *Espiritu Santo Holdings, LP v. L1bero Partners, LP*, No. 19 Civ. 3930

he was deprived of shares that were owed to him, per the RSPA.  Should he prevail in

arbitration, his award will be classically monetary—either his shares will be returned to him, or

he will be entitled to a damages award reflecting the value of those shares.  Shubin has not made

any argument that such remedies would be unavailable to him, or that these would fail to

adequately compensate him for the misconduct he claims.  Accordingly, the Court denies

Shubin's application for a preliminary injunction.

### C.    Defendants' Costs and Fees

Defendants seek attorneys' fees and costs associated with moving to compel and

opposing injunctive relief.  The Court declines to award such fees and costs.  Attorneys' fees and

costs are available when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive

reasons."  *First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Emps. Union

Local 338*, 118 F.3d 892, 898 (2d Cir. 1997).  Defendants argue they are entitled to such fees and

costs, because Shubin's claims were obviously arbitrable under the RSPA.  Def. Memo at 12.

But Shubin did not dispute the arbitrability of his claims.  He opposed defendants' motion only

insofar as he sought first to secure injunctive relief—relief which the RSPA permits to be

pursued in court.  Pl. Memo at 9.  That he was unsuccessful does not make his bid so baseless as

to be entirely meritless or without justification.  *See China Nat. Chartering Corp. v. Pactrans Air

& Sea, Inc.*, 882 F. Supp. 2d 579, 605 (S.D.N.Y. 2012); *Dodge Hyundai of Paramus v. United

Welfare Fund, Welfare Div.*, No. 11 Civ. 979 (ARR), 2011 WL 4356373, at \*8 (E.D.N.Y. Sept.

---

(CM), 2019 WL 2240204, at \*21 (S.D.N.Y. May 14, 2019), *aff'd*, 789 F. App'x 288 (2d Cir.
2020) (summary order); *Awosting Rsrv. LLC v. Chaffin/Light Assocs. Co.*, 296 F. Supp. 2d 470,
473 (S.D.N.Y. 2003); *Franzese v. Franzese*, 436 N.Y.S.2d 979 (N.Y. Sup. Ct. 1981); *Orange &
Rockland Utilities, Inc. v. Amerada Hess Corp.*, 324 N.Y.S.2d 494 (N.Y. Sup. Ct. 1971); *Andino
v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008) ("It is well established that in this Circuit
the standard for an entry of a [temporary restraining order] is the same as for a preliminary
injunction.").

16, 2011).  The Court accordingly declines to award fees and costs associated with the motions to compel and for injunctive relief.

**D.     Stay**

The Second Circuit has held that that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015).  Such a stay is appropriate here because it will expedite this case by enabling prompt arbitral resolution of Shubin's claims and deferring any appellate review until after the arbitration has concluded. Accordingly, the Court stays this case pending arbitration.

**CONCLUSION**

For the foregoing reasons, the Court grants the motion to compel arbitration and stays the action pending the outcome of arbitration.

The parties are directed to submit a joint status letter to the Court every 90 days, measured from the date of this decision, advising the Court as to the status of arbitration proceedings.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated:  January 19, 2022
          New York, New York